JILL A. CAMERON,            )
                                     )
        *Plaintiff*,          )     No. 1:15-cv-169-HSM-SKL
                                     )
v.                              )
                                   )
COMMISSIONER OF SOCIAL SECURITY,  )
                                   )
        *Defendant*.       )
                                   )

## REPORT AND RECOMMENDATION

Plaintiff Jill A. Cameron ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 14 & 15] with supporting briefs [Docs. 14-1 & 16]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her current applications for DIB and SSI in January 2012, alleging disability as of August 1, 2010 (Transcript [Doc. 10] ("Tr.") 12, 186-93). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ") (Tr. 90-95, 97-102, 104). The ALJ held a hearing on October 2, 2013, and a supplemental hearing on January 15, 2014, during both of which Plaintiff was represented by an attorney (Tr. 12, 28, 54). The ALJ issued a decision on January 30, 2014, in which the ALJ

determined Plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 12-21). Plaintiff timely requested that the Appeals Council review the ALJ's unfavorable decision (Tr. 1). On April 30, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born in 1960 and was 50 years old at her alleged onset date (Tr. 20, 186, 192). She alleges that she became disabled beginning August 1, 2010 (Tr. 14, 186, 192). Plaintiff has at least a high school education (Tr. 20, 209) and her past work includes as a fast-food worker (Tr. 20, 61, 210).

### B.     Medical Records

Plaintiff alleges disability due to degenerative joint disease, bipolar disorder, anxiety disorder, a pinched nerve, high blood pressure, acid reflux disease, and high cholesterol (Tr. 208). Only select portions of Plaintiff's medical records will be addressed within the respective sections of the Court's analysis below, but all relevant records have been reviewed.

### C.     Hearing Testimony

The Court has carefully reviewed the transcripts of the testimony at the hearings. While it is not necessary to summarize the testimony herein, the testimony will be addressed as appropriate within the respective sections of the Court's analysis below.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B.     The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through June 30, 2011 (Tr. 14). At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since August 1, 2010, the alleged onset date (Tr. 14). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, obesity, depression, generalized anxiety disorder, and panic disorder without agoraphobia (Tr. 14-15). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 15). The ALJ specifically considered Listings 12.04 and 12.06, and determined that Plaintiff's mental impairments did not meet or medically equal the criteria in those listings (Tr. 15-16). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, except that Plaintiff could stand and/or walk for two hours during an eight-hour day and sit for six hours during an eight-hour day with the ability to alternate sitting and standing every 30 minutes (Tr. 16). The ALJ found Plaintiff should not kneel or crawl but could occasionally stoop and crouch, and she could occasionally climb stairs or ramps but should not climb ladders, ropes or scaffolds (Tr. 16). The ALJ further found that Plaintiff's mental impairments limited her to the performance of unskilled work (Tr. 16). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 20). At step five, the ALJ noted that Plaintiff was 50 years old on the alleged disability onset date,

4

which is defined as an individual closely approaching advanced age, had at least a high school education, and was able to communicate in English (Tr. 20). After considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids") as a framework for his decision and considering the testimony of a vocational expert, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 20-21). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from the alleged onset date, August 1, 2010, through January 30, 2014, the date of the ALJ's decision (Tr. 21).

## IV.    ANALYSIS

Plaintiff alleges that the ALJ erred: (1) by finding that Plaintiff had the RFC to perform light work; (2) by failing to address or consider the opinions of Rosalie Whitaker, a family nurse practitioner, Lauren Cameron, Plaintiff's mother-in-law, and Judy Crans, Plaintiff's cousin and roommate; and (3) by failing to sufficiently assess Plaintiff's credibility. Each of Plaintiff's arguments, which overlap to some degree, will be addressed below.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's

findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the

ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

### B. The ALJ's Credibility Determination

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. Specifically, Plaintiff argues that the ALJ did not follow SSR 96-7p, 1996 WL 374186 (July 2, 1996), because the ALJ "[did] not articulate specific reasons why [Plaintiff's] testimony or statements lack credibility" [Doc. 14-1 at Page ID # 505]. Rather, Plaintiff contends that the ALJ improperly relied on the following boilerplate credibility assessment: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the

reasons explained in this decision" [Doc. 14-1 at Page ID # 505 (quoting Tr. 19)].  Defendant explains that the ALJ properly evaluated Plaintiff's credibility consistent with the agency's regulations and policies [Doc. 16 at Page ID # 518].  As Defendant correctly points out, contrary to Plaintiff's arguments, the ALJ did not rely on a boilerplate credibility assessment but instead provided a thorough explanation in his opinion for discounting Plaintiff's subjective assessment of her pain based on the objective medical evidence and other factors.  *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding the ALJ followed up his boilerplate credibility assessment by thoroughly explaining elsewhere in his opinion his reasons for doubting the claimant's account of his pain).  Plaintiff counters that contrary to *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359 (6th Cir. 2014), the ALJ here "failed to articulate reasons that were supported by the evidence in the case record as it is filled with factual errors and substantive omissions" [Doc. 14-1 at Page ID # 506 (emphasis omitted)].[1]

An ALJ must explain a credibility determination so that it is sufficiently clear to the claimant and any reviewing court what weight the ALJ gave to the claimant's statements and the reasons for that weight—the ALJ cannot make "blanket assertions that the claimant is not believable."  *Rogers*, 486 F.3d at 248.  While a blanket assertion without explanation is not an acceptable credibility determination, the ALJ is not required to provide a detailed analysis of all

---

[1] Based on Plaintiff's brief, the "factual errors and substantive omissions" were: (1) the ALJ omitted the May 2012 MRI of Plaintiff's lumbar spine [Doc. 14-1 at Page ID # 506]; (2) the ALJ cited an April 2010 physical examination as unremarkable when Plaintiff was visiting family nurse practitioner Whitaker solely for treatment of allergic rhinitis and to refill her regular medications [*id.* at Page ID # 507]; (3) the ALJ cited Plaintiff's January 2011 emergency room visit as inconsistent with findings of disabling back pain when the Plaintiff presented for left side abdominal pain that was subsequently diagnosed an as urinary tract infection [*id.*]; (4) the ALJ noted that in August 2013 Plaintiff remarked that she was feeling good when the treatment notes stated "she just doesn't feel good today" [*id.*]; and (5) the ALJ noted that Dr. Arthur Lorber stated the record demonstrated "no evidence of any significant impediment" when no such statement was made [*id.*].  All of these alleged errors and/or omissions are addressed *infra* herein.

8

the evidence pertaining to credibility. "True, an ALJ is required to . . . provide specific reasons for crediting or discrediting a claimant's testimony. But he is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (citation omitted). Here, I **FIND** that the ALJ did not merely rely on a boilerplate assessment but as explained further below, provided explanation and specific reasons for discounting Plaintiff's assessment of disabling pain.

According to applicable regulations, the ALJ must consider a claimant's credibility in light of all the evidence in the record, including the claimant's own statements regarding the nature and severity of her symptoms, her daily activities, her prior work record, her physicians' medical diagnoses, prognoses, and opinions, her medications and other treatments, and any other relevant factors. SSR 96-7p. The ALJ must consider these factors, but he is not required to devote written attention to each piece of evidence he considers. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Instead, the applicable regulations provide that the ALJ must state the reasons for his assessment of the claimant's credibility, and those reasons must themselves be grounded in the record. SSR 96-7p.

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradiction among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818

9

F.2d 461, 463 (6th Cir. 1987).  Nevertheless, an ALJ's credibility assessment must be supported by substantial evidence.  *Walters*, 127 F.3d at 531.

In evaluating Plaintiff's credibility, the ALJ found that the Plaintiff's allegations of debilitating physical and mental impairments were inconsistent with the record as a whole (Tr. 17).  The ALJ acknowledged that the record showed a history of treatment for back pain and agreed that Plaintiff could experience some discomfort and limitation of function related to her degenerative disc disease, osteoarthritis, and obesity but not to the degree alleged by Plaintiff (Tr. 17, 19).[2]  He explained that "physical examinations have been unremarkable and it was repeatedly noted she exhibited a normal gait and no distress" (Tr. 19).  The ALJ relied on the fact that the record showed little, if any, mention of adverse side effects caused by Plaintiff's medications and only showed requests for less expensive medications (Tr. 19).  He further noted that while Plaintiff alleged her pain kept her in bed for much of the day, Plaintiff's treatment records in February 2013 indicated that she continued to provide care for a 67-year old woman (Tr. 18, 57, 389).

The ALJ discussed the mild physical findings, including unremarkable findings and examinations during which Plaintiff did not complain of back pain (Tr. 17).  More specifically, the ALJ discussed the x-rays of Plaintiff's lumbar spine in June 2009 that "revealed mild dextroscoliosis and moderate degenerative disc disease at L1-2 and L2-3 with mild degenerative

---

[2] Plaintiff testified at the October 2013 hearing that she has difficulty standing and walking and spends most of the day in bed (Tr. 17, 57).  The prescription medication that she takes for pain causes drowsiness and she naps during the day (Tr. 17, 59).  She also testified that she does not like crowds of people (Tr. 17, 63).  In an agency questionnaire, Plaintiff explained that she rarely left her home, performed self-care activities with little assistance, prepared simple meals occasionally but performed no household chores, did not drive, did little, if any, shopping, and watched television and interacted with her daughter and family without difficulty (Tr. 17, 229-233).

changes at L3-4 and L5-S1" and "no mention of stenosis or foraminal narrowing" (Tr. 17, 308-09). April 2010 treatment notes showed continued diagnosis of depression, generalized anxiety disorder and degenerative disc disease along with continued medication for pain and mental health issues, and the physical examination was unremarkable (Tr. 17, 299-301). In January 2011, Plaintiff visited the emergency room with abdominal pain but little, if any, complaint of back pain (Tr. 17, 315-29). The physical examination was unremarkable (Tr. 17).

Without citing any authority, Plaintiff contends that it was improper for the ALJ to consider examinations with unremarkable findings when the Plaintiff was seeking treatment specifically for something other than her back pain as being inconsistent with Plaintiff's complaints of disabling back pain. However, as Defendant correctly argues, the ALJ is directed to consider all of the evidence in the record in evaluating Plaintiff's claims and credibility. *See* SSR 96-7p ("A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility."). Accordingly, I **FIND** that the ALJ properly considered examinations with mild and unremarkable findings as to Plaintiff's back pain when determining Plaintiff's credibility. As noted above, the ALJ is free to rely on his own reasonable assessment of the record over Plaintiff's testimony, which the ALJ may discount after consideration of credibility, motivation, and medical evidence. *See White*, 572 F.3d at 287; *Atterberry*, 871 F.2d at 571. The ALJ reasonably found that the mild findings undermined Plaintiff's subjective complaints and allegations of disabling pain.

The ALJ also relied on the objective findings of Dr. Thomas Mullady and Dr. Arthur Lorber to support his credibility determination that Plaintiff's back impairment would not cause the level of disabling pain or discomfort as Plaintiff alleged. Dr. Mullady, a consultative

physician, evaluated Plaintiff in May 2012 at the request of the SSA (TR. 17). Plaintiff continued to allege back and neck pain, as well as right knee pain (Tr. 17, 345). Dr. Mullady's physical examination showed that Plaintiff had a moderate decrease in range of motion in the lumbar and cervical spine and the bilateral knee joints (Tr. 17, 345). Muscle strength, grip strength, manual dexterity, and gait were normal and there were no sensory deficits (Tr. 17, 345). X-rays of the lumbar spine revealed multilevel degenerative and osteoarthritic changes (Tr. 17, 345, 347). Dr. Mullady opined that Plaintiff could occasionally lift and/or carry a maximum of 20 pounds and frequently lift and/or carry a maximum of 10 pounds and could stand and/or walk with normal breaks for at least two hours in an eight-hour workday and sit with normal breaks for at least six hours in an eight-hour workday (Tr. 18, 345-46). The ALJ found Plaintiff's allegations of disabling pain to be inconsistent with these objective findings (Tr. 17).

Dr. Arthur Lorber, an impartial medical expert and orthopedist, testified at the January 15, 2014 hearing after reviewing the entire record except for the October 1, 2013 one-page handwritten letter from nurse practitioner Rosalie Whitaker (Tr. 18, 33). The ALJ, however, read portions of, and summarized, the one page letter to Dr. Lorber during the hearing, and Plaintiff's attorney agreed that the ALJ accurately summarized the letter (Tr. 33-34). Dr. Lorber testified that a May 2012 MRI revealed "a mild to moderate scoliosis with degenerative disc disease at three levels" with a disc protrusion (Tr. 35). Dr. Lorber also testified that Plaintiff's impairments did not meet or equal the requirements of the Listing § 1.04 and that he agreed with the findings of Dr. Mullady's examination (Tr. 18, 35-36). Dr. Lorber opined during the hearing that Plaintiff could perform a limited range of light work as follows:

> the claimant could occasionally lift 20 pounds and frequently 10, the claimant may occasionally stoop and crouch. She should not kneel or crawl, occasionally stand and/or walk for a total of two hours per day not more than 30 minutes at a time. The claimant

may sit for a total of six hours per day not more than 30 minutes at a time. At the completion of sitting for 30 minutes the claimant may rise and continue to work at her workstation in a standing position or she may walk away and work elsewhere in a standing position or walking. The claimant should avoid -- she may after 30 minutes of standing and/or walking she should remove her shoes sitting. The claimant should avoid exposure to concentrated vibration, she should not work at unprotected heights and she should not climb ladders, scaffolds or ropes. She may occasionally -- stairs and/or ramps, she may occasionally operate foot pedals with either foot, she may occasionally work around moving machinery, she does not require any other exertional and environmental, positional or exertional restrictions.

(Tr. 36).

Plaintiff contends that the ALJ erred by omitting or not considering the May 21, 2012 magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine. However, as Defendant correctly argues, the ALJ questioned Dr. Lorber specifically about the May 21, 2012 MRI that was ordered by nurse practitioner Whitaker. In fact, the ALJ conducted a supplemental hearing on January 15, 2014 because he wanted expert medical testimony regarding the May 21, 2012 MRI and Plaintiff's back problem (Tr. 32). Dr. Lorber testified that the MRI revealed:

a mild to moderate scoliosis with degenerative disk disease at three levels, L1-2, L2-3, and L5-S1. At the L5-S1 level there was a disk protrusion, which was causing a diminution in the right neural foramen. There was no evidence of significant central spinal canal, more [sic] of nerve root impingement. A clinical examination does not demonstrate significant evidence of focal neurological deficits. This would be a clinical examination of the state appointed consultative Dr. Mullady . . . on 10 May of '12, at which time he found a normal gait, straight leg raising was negative, he mentioned no evidence of focal neurologic deficits.

13

(Tr. 35-36).[3]  When given the opportunity to question Dr. Lorber during the January 2014 hearing, Plaintiff's counsel, however, chose not to question him about his medical testimony and opinions (Tr. 37).  As the ALJ is not required to specifically write about and reference each piece of evidence that he considered, I **FIND** that, based on the record, the ALJ properly considered the May 21, 2012 MRI.

In his opinion, the ALJ wrote that "Dr. Lorber noted the record demonstrated findings of mild degenerative disc disease with disc protrusion and no evidence of any significant *impediment*" (Tr. 18) (emphasis added).  Plaintiff argues that Dr. Lorber made no statement "that could remotely be construed to be consistent with [this] statement" [Doc. 14-1 at Page ID # 507]. Defendant contends that "Dr. Lorber did state that Plaintiff's MRI showed no evidence of significant *impingement*" [Doc. 16 at Page ID # 520-21] and thus the ALJ likely made a typographical error.  Defendant further contends that this typographical error is harmless and does not alter the outcome of the case since the ALJ's decision and assessment of credibility is supported by substantial evidence and thus remand is not required.  *See Ulman v. Comm'r of Soc. Sec.* 693 F.3d 709, 712-13 (6th Cir. 2012) (noting ALJ's factual mistake was harmless when the ALJ's credibility finding was based on a lengthy analysis of evidence to support the credibility determination).  Given the ALJ's thorough review and consideration of the evidence, to the extent that the ALJ erred by misstating Dr. Lorber's testimony, I **FIND** that any such error was harmless and does not rise to the level of reversible error because, as explained further

---

[3]  Although not raised by the Plaintiff, upon reviewing the hearing transcript in context, it reasonably appears that Dr. Lorber used the word "nor" rather than "more" and thus there is a typographical error in the hearing transcript as noted above.  I **FIND** this typographical error to be harmless.  It is clear from Dr. Lorber's entire testimony that he did not find objective evidence of a disabling back impairment as alleged by Plaintiff and opined based on his review of the record that Plaintiff could perform a limited range of light work.

14

herein, the ALJ's credibility determination is supported by substantial evidence in the entire record.

Plaintiff further contends that the ALJ erred in his evaluation of Plaintiff's credibility because he misread an August 2013 treatment note as representing that Plaintiff "feel[s] good today" rather than incorporating words from a previous line in the record that represented "she just doesn't feel good today" (Tr. 384). [Doc. 14-1 at Page ID # 506]. While the treatment note supports the statement that Plaintiff "just doesn't feel good today" (Tr. 384), reading the treatment note in its entirety supports that she was complaining of not feeling good because of problems with her sinuses. During the visit, she also requested a refill of her blood pressure medicine but she otherwise had no other specific complaints for seeking treatment (Tr. 384). Again, to the extent that the ALJ erred in summarizing this note, I **FIND** it is harmless error because the ALJ's credibility determination is supported by substantial evidence in the entire record.

The ALJ reasonably considered a variety of relevant factors in assessing the overall nature and severity of the limitations caused by Plaintiff's impairments, symptoms, and complaints of pain in accordance with the evaluation factors as set forth in SSR 96-7p and 20 C.F.R. § 404.1529. He determined that Plaintiff's reported daily activities undermined her complaints of disabling pain. He discussed that Plaintiff could perform self-care activities with little assistance, could prepare simple meals occasionally, could watch television and could interact with her daughter and family without difficulty (T. 17, 229-35). He also considered that, while Plaintiff testified in October 2013 that she spent most of the day in bed, treatment records in February 2013 indicated that she continued to provide care for a 67-year old woman (Tr. 18, 57, 389). The ALJ considered the opinions of Dr. Mullady and Dr. Lorber which supported the

ALJ's RFC and there were no other medical opinions that included more severe restrictions for Plaintiff's RFC assessment.

Assessing Plaintiff's credibility is entrusted to the ALJ, not this Court, as the ALJ had the opportunity to observe Plaintiff's demeanor during the hearing. *Rogers*, 486 F.3d at 247; *Jones*, 336 F.3d at 476. As required, this Court gives substantial deference to the ALJ's credibility assessment, which is "virtually unchallengeable." *Ritchie*, 504 F. App'x at 511 (internal quotation marks and citations omitted). Accordingly, I **FIND** that the ALJ properly considered the inconsistencies in the record in evaluating Plaintiff's credibility and that the ALJ's overall credibility assessment is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ made statements at the hearing that undermine his credibility assessment. First, Plaintiff argues that the ALJ indicated his disregard for Plaintiff's pain (and for claimants generally) when he stated during the January 15, 2014 hearing that "almost everybody who comes in here has some kind of back problem, complaints of unremitting, unrelenting, constant, severe pain (Tr. 47). [Doc. 14-1 at Page ID # 508]. The ALJ made this statement as part of what appears to be his effort to explain to Plaintiff's counsel the difficulties of assessing pain and credibility. However, it appears the ALJ fully considered Plaintiff's credibility in light of the record as a whole and addressed the reasons that he discounted Plaintiff's allegations of disabling pain based on substantial evidence in the record. Thus, I **FIND** that the ALJ's remark does not discredit his credibility and pain assessments in this case. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004) ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing.").

16

Next, Plaintiff argues that the ALJ stated during the hearing he would take into consideration the quantity and quality of Plaintiff's pain medications and then he only mentioned in his opinion Plaintiff's use of medication for pain and the lack of medication side effects [Doc. 14-1 at Page ID #508]. The ALJ noted in his decision that Plaintiff testified that she took prescription medication for pain that caused drowsiness (TR. 17, 59), that treatment notes indicated that Plaintiff took medication for pain and mental health issues (Tr. 17, 284-314), and that Plaintiff's nurse practitioner indicated that Plaintiff's treatment included low-cost medications (Tr. 18, 405). The ALJ further considered that the record showed little, if any, mention of adverse side effects due to medication (Tr. 19). *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665 (6th Cir. 2004) ("Although [claimant] testified that she suffered from dizziness and drowsiness as a result of her medications, [claimant's] medical records make no indication that [claimant] reported such side effects to any of her physicians."). I **FIND** that the ALJ properly considered the medications taken by Plaintiff and their side effects which is reflected in the ALJ's opinion (Tr. 17-20).

In summary, I **CONCLUDE** that the ALJ's credibility assessment discounting Plaintiff's allegations of disabling pain is supported by substantial evidence in the entire record.

### C. The ALJ's Consideration of Opinions of Nurse Practitioner and Third Parties

Plaintiff contends that the ALJ failed to address or consider the opinions of Plaintiff's nurse practitioner, mother-in-law, and cousin. Rosalie Whitaker, a family nurse practitioner who had been seeing Plaintiff, wrote a handwritten letter, stating Plaintiff was "reliable" and "worth any investment that would be bestowed upon her", which Plaintiff argues supports her disability (Tr. 405). Ms. Whitaker indicated that "without resources there is little option for treatments beyond those she currently has" (Tr. 405). Defendant contends that the ALJ outlined the

regulatory factors that he properly relied on in evaluating Plaintiff's credibility and he was not required to discuss every piece of evidence in the record.

A nurse practitioner is not an "acceptable medical source" under the applicable regulations, but rather falls into the category of "other sources." *See* 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1). Nevertheless, an ALJ may consider an opinion from a nurse practitioner when determining the severity of a claimant's impairments and the individual's ability to function. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ has discretion to determine the weight to give opinions from "other sources" such as nurse practitioners. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014).

Here, the ALJ considered Ms. Whitaker's treatment notes and her handwritten letter (Tr. 18). Plaintiff acknowledges that the ALJ discussed in his opinion Ms. Whitaker's letter, including Plaintiff's diagnoses, lack of resources to afford treatment options, and compliance with pain medication agreements [Doc. 14-1 at Page ID # 501-02]. While Ms. Whitaker explained in her letter that Plaintiff was "worth any investment", she did not provide opinions or insights into "key issues such as impairment severity and functional effects." *Engebrecht*, 572 F. App'x at 398 (citing SSR 06-03p). The ALJ determined that Plaintiff could experience some limitation of function related to her degenerative disc disease, osteoarthritis and obesity; however, he determined that physical examinations have been unremarkable; treatment notes repeatedly noted that Plaintiff exhibited a normal gait and no distress; and the record showed little, if any, indication of adverse side effects of medication and only showed Plaintiff's request for less expensive medicines not for different treatment options (Tr. 19). Accordingly, I **FIND** that the ALJ considered Ms. Whitaker's handwritten letter and, as explained in his opinion, outlined the regulatory factors that he used to evaluate Plaintiff's credibility. The ALJ's

credibility determination is well supported by substantial evidence in the record as explained above.

Similarly, the opinions and testimony of Lauren Cameron, Plaintiff's mother-in-law, and Judy Crans, Plaintiff's cousin and roommate, fall into the category of "other source" and cannot establish that a plaintiff has medical determinable impairments. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Plaintiff argues that Ms. Cameron's and Ms. Crans's testimonies were consistent with Plaintiff's testimony of her disabling pain.[4] Plaintiff contends that the ALJ's failure to address their opinions is the basis for reversal and remand [Doc. 14-1 at Page ID # 503]. As Defendant correctly counters, the ALJ's failure to discuss the testimony of Judy Crans and Lauren Cameron in his opinion does not mean that the testimony was not considered. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664-65 (6th Cir. 2004). Further, the ALJ is not required to discuss every third-party opinion pursuant to SSR 96-7p when making a credibility determination. *See* SSR 96-7p, 1996 WL 374186, at *2 (requiring the ALJ to consider the entire care record including "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual"); *see also Thacker*, 99 F. App'x at 665 (discussing that SSR 96-07p only requires consideration and failure to discuss certain observations about claimant does not indicate that the observations were not considered by the ALJ). "An ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker*, 99 F. App'x at 665.

---

[4] Ms. Cameron and Ms. Crans submitted statements to the Social Security Administration regarding Plaintiff's daily activities, alleged pain, and symptoms (Tr. 254-58).

Accordingly, I **FIND** that the ALJ properly considered the evidence in the record as a whole and his credibility determination discounting Plaintiff's allegations of disabling pain is supported by substantial evidence in the record.

### D. The ALJ's Finding Regarding Other Work in the National Economy

Plaintiff argues that the ALJ's RFC finding was inconsistent with the definition of light work and that she is therefore disabled under Rule 201.14 of the Medical-Vocational Guidelines. Because the ALJ found that Plaintiff could stand and walk for only two hours in an eight-hour workday, Plaintiff argues that the ALJ should have classified her RFC as sedentary work.[5] Defendant argues that the ALJ properly found that Plaintiff's RFC was between light and sedentary work and appropriately relied on the testimony of the Vocational Expert ("VE") to determine that Plaintiff could perform jobs that existed in significant numbers in the national economy.

When a claimant's exertional limitations fall somewhere "in the middle" of two ranges of work, vocational assistance is required to assess the effect of any limitations on the range of work at issue. SSR 83-12, 1983 WL 31253 (1983); *see also Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013) (vocational expert testimony is required regarding the jobs

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) & 416.967(a). "Occasionally" means "occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL31251, at *5 (1983). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds" and "requires a good deal or walking or standing." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

available to an individual whose limitations do not fall squarely within either grid; so long as the hypothetical is accurate, the ALJ may rely on the vocational expert's testimony).

Here, the ALJ determined that Plaintiff was limited to a reduced range of unskilled light work due in part to a limitation to standing and walking for two hours in an eight-hour workday with a 30 minute sit/stand option (Tr. 16, 20).  The ALJ appropriately obtained the testimony of the VE to help determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base (Tr. 20-21, 40-42).  The VE testified that a person with Plaintiff's vocational profile and RFC could perform unskilled light exertional work as a bench assembly worker, a production inspector, and a machine tender (Tr. 20-21, 40-41).  Based on this testimony, the ALJ found that Plaintiff could perform other work existing in the national economy and was not disabled (Tr. 21).  The VE's testimony is substantial evidence that supports the ALJ's finding.

Plaintiff further asserts that the SSA published on February 13, 2015 an update to Program Operations Manual System ("POMS") DI 25025.015 which included an example similar to Plaintiff's situation for a 50-year old with an RFC for standing/walking two hours of an 8-hour work day that falls between two ranges.  Plaintiff notified the Commissioner of this POMS update while her case was pending at the Appeals Council.  Plaintiff contends that the example was removed and the POMS were republished on March 27, 2015.  Plaintiff argues that regardless of the removal of the example, standing and walking two hours during an 8-hour day is sedentary work.

The SSA's POMS is an internal agency manual.  Its guidelines have no legal force, and failure to follow the POMS is not legal error.  *See Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not

have the force and effect of law . . . ”); *see also Wells v. Astrue*, No. 09-32-GWU, 2009 WL 3400911, at *4 (E.D. Ky. Oct. 20, 2009) (“The POMS contains a disclaimer indicating that it ‘states only internal SSA guidance’ and ‘is not intended to, and does not, and may not be relied upon to create any rights enforceable by law by any party in a civil or criminal action.’”).

Accordingly, I **FIND** that the ALJ’s conclusion that jobs exist in significant numbers in the national economy was supported by substantial evidence.


## V.      CONCLUSION

Having carefully reviewed the administrative record and the parties’ arguments, I **RECOMMEND**[6] that:

1) Plaintiff’s motion for judgment on the pleadings [Doc. 14] be **DENIED**;

2) The Commissioner’s motion for summary judgment [Doc. 15] be **GRANTED**; and

3) The Commissioner’s decision denying benefits be **AFFIRMED**.


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court’s order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed’n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).